# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| JAMES W. RODKEY, : | |
| Plaintiff : | CIVIL ACTION NO. 1:17-784 |
| v. : | |
| NANCY BERRYHILL, : | (JUDGE MANNION) |
| Acting Commisioner of | |
| Social Security, : | |
| Defendant : | |

## MEMORANDUM

The above-captioned action is one seeking review of a decision of the Acting Commissioner of Social Security ("Commissioner") denying the plaintiff's application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§401-433. The court has jurisdiction pursuant to 42 U.S.C. §405(g). Currently before the court are the parties' cross-motions for summary judgment. (Doc. 11, Doc. 13). For the reasons set forth below, defendant's motion will be granted and plaintiff's motion will be denied.

## I. BACKGROUND[1]

Disability insurance benefits are paid to an individual if that individual is

---

[1] Since the administrative law judge ("ALJ") and the parties have set forth the medical history of plaintiff in their respective filings, it will not be fully repeated herein. Rather, the plaintiff's medical history will be discussed only to the extent it is relevant to the issues raised in this appeal.

disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that plaintiff met the insured status requirements of the Act through December 31, 2014. (Tr. 14).[2] In order to establish entitlement to DIB, the plaintiff was required to establish that he suffered from a disability on or before that date. 42 U.S.C. §423(a)(1)(A), (c)(1)(B); 20 C.F.R. §404.131(a); see Matullo v. Bowen, 926 F.2d 240, 244 (3d Cir. 1990).

The plaintiff was born on July 7, 1961, (Tr. 37), and was fifty-three (53) years old, a person "closely approaching advanced age," 20 C.F.R. §404.1563(c), (d), on his date last insured. (Tr. 70). The plaintiff has obtained a GED, and his past relevant work was as a carpenter, construction worker and HVAC installer. (Tr. 41, 198, 211).

The plaintiff protectively filed a claim for DIB on July 17, 2013, alleging disability commencing on December 10, 2010. (Tr.). The agency denied the plaintiff's application initially on September 18, 2013, and upon reconsideration on February 26, 2014. (Tr. 84, 101). The plaintiff requested a hearing before an ALJ, which was held on October 21, 2015. (Tr. 33-69).

The plaintiff testified at the hearing before the ALJ. (Tr. 37-56). Also testifying at the hearing was Jennifer Guediri, a vocational expert ("VE").

---

[2]References to "Tr. __" are to pages of the administrative record filed by the defendant along with the Answer (Doc. 8).

2

Considering the medical evidence of record, as well as the plaintiff's testimony, the ALJ posed a hypothetical question to the VE considering an individual with the residual functional capacity ("RFC") to perform light work except the plaintiff requires a sit/stand option defined as having the ability to stand and stretch in place following thirty (30) minutes of sitting, or having the ability to sit after thirty (30) minutes of standing; the plaintiff can no more than frequently push and pull with the lower left extremity, can never climb ladders, ropes, and scaffolds and can never crawl; the plaintiff can occasionally stoop, kneel, balance, crouch, and climb ramps and stairs; the plaintiff is limited to not more than frequent reaching in all directions with his right shoulder, and no more than occasional pushing and pulling with his bilateral upper extremities; the plaintiff is to have no more than occasional exposure to vibrations and hazards such as unprotected heights and moving machinery. Based on this hypothetical, the VE testified that such a person would be able to perform work as a gate guard, usher and counter clerk. (Tr. 25, 57-67).

  The ALJ issued a decision on December 31, 2015, finding that plaintiff was not disabled within the meaning of the Act. (14-26). The plaintiff filed a request for review, which was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Since plaintiff exhausted his administrative remedies, he initiated the present action on June 19, 2017, appealing the final decision of the Commissioner. (Doc. 1).

  The plaintiff appeals the ALJ's determination arguing that the ALJ did

not give legally sufficient good reasons to reject his treating physician's assessment of his work related limitations. As relief, the plaintiff seeks to have the court reverse the Commissioner's decision and remand his case to the Commissioner for further proceedings.

## II. STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel, 181 F.3d 358, 360. (3d Cir. 1999), Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §432(d)(1)(A). Furthermore,

[a]n individual shall be determined to be under a disability only if

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

In the present case, there are cross-motions for summary judgment. "In Social Security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(c)." Antoniolo v. Colvin, 208 F.Supp.3d 587, 595 (D.Del. 2016) (citing Woody v. Sec'y of the Dep't of Health & Human Servs., 859 F.2d 1156, 1159 (3d Cir.1988).

### III. DISABILITY EVALUATION PROCESS

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. §404.1520. See also Plummer, 186 F.3d at 428. If the Commissioner finds that a plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment

5

meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §404.1520.

Here, the ALJ proceeded through each step of the sequential evaluation process to conclude that the plaintiff was not disabled within the meaning of the Act. The ALJ found that plaintiff has not engaged in substantial gainful activity during the period from his alleged onset date of December 10, 2010 through his date last insured of December 31, 2014. (Tr. 16). Next, the ALJ determined that plaintiff suffered from severe impairments, including degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the left knee and obesity. (Tr. 16). The ALJ then found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 19).

Based upon the evidence of record, the ALJ determined that plaintiff had the RFC[3] to perform light work activity as defined in 20 C.F.R. §404.1567(b), with the restrictions posed to the VE outlined above. (Tr. 19-20). Given these restrictions and based upon the testimony of the VE, the ALJ

---

[3]Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis." See Social Security Ruling 96–8p, 61 Fed.Reg. 34475. A "regular and continuing basis" contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule.

6

found that the plaintiff was unable to perform any of his past relevant work, but that there were jobs in the national economy which he could perform. (Tr. 24-25).

## IV. DISCUSSION

In his appeal, the plaintiff argues that the ALJ did not give legally sufficient good reasons for rejecting the assessment of his work related limitations provided by Dr. Coveleski, his treating pain rehabilitation specialist. The plaintiff argues that Dr. Coveleski completed an assessment form on which he indicated that the plaintiff requires an assistive device for standing/walking, that he can stand/walk only minimal amounts in an eight (8) hour day, and is only able to lift up to five (5) pounds repeatedly. Moreover, Dr. Coveleski indicated that the plaintiff can never reach overhead or push/pull with his arms, and can only occasionally reach, handle and finger objects with his hands and arms. Dr. Coveleski opined that the plaintiff can never bend, squat or climb, and that he would often require additional breaks during the workday in excess of the usual fifteen (15) minute morning and afternoon break and thirty (30) minute lunch break, and experiences ten (10) to fifteen (15) "bad days" per month during which his symptoms are increased and he would not be able to complete an eight (8) hour shift. The plaintiff argues that these limitations are far greater than those set forth in the ALJ's RFC assessment and that the ALJ did not give good reasons for rejecting the

7

limitations in Dr. Coveleski's assessment.

In considering the plaintiff's challenge to the decision of the ALJ regarding his RFC assessment, the ultimate responsibility for deciding a claimant's RFC rests with the ALJ, see 20 C.F.R. §404.1546, and the opinion of a treating physician does not bind the ALJ on the issue of functional capacity. Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2011). The ALJ must base her RFC assessment on a consideration of all of the evidence in the record, including the testimony of the claimant regarding his activities of daily living, medical records, lay evidence, and evidence of pain. See Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 121-122 (3d Cir. 2000). The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. See 20 C.F.R. §404.1527(c).

In arriving at a claimant's RFC, an ALJ should be mindful that the preference for the treating physician's opinion has been recognized by all of the federal circuits. See, e.g., Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). This is especially true when the treating physician's opinion "reflects

expert judgment based on a continuing observation of the patient's condition over a prolonged time." Morales, 225 F.3d at 317; Plummer, 186 F.3d at 429; see also 20 C.F.R. §416.927(d)(2)(i)(1999) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

When the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." Morales, 225 F.3d 316-18. The ALJ has the authority to determine which medical opinions he rejects and accepts, and the weight to be given to each opinion, 20 C.F.R. §416.927, and is permitted to give great weight to a medical expert's opinion if the assessment is well-supported by the medical evidence of record.

Regardless of what weight the ALJ affords to the medical opinions of record, the ALJ has the duty to adequately explain the evidence that he or she rejects or affords lesser weight. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000). In this regard, the ALJ's decision need only be specific enough to allow the reviewing court to determine the weight given to the opinion and the reasons for that weight. See SSR 96-2p.

In rejecting the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject the treating

physician's opinions outright only on the basis of contradictory medical evidence. Morales, 225 F.3d at 316-18. An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. Id.

Here, in considering the opinion of Dr. Coveleski, although the records contain support that the plaintiff has physical limitations and pain as a result of his conditions, the ALJ noted that the doctor's opinion was inconsistent with his own examinations of record and with other medical evidence of record. As for his own records, although Dr. Coveleski placed severe functional restrictions upon the plaintiff, his records demonstrate that the plaintiff frequently demonstrated normal gait with normal muscle strength in all of the major muscle groups. Moreover, he noted deep tendon reflexes were equal and symmetric bilaterally in the upper and lower extremities. Although Dr. Coveleski opined that the plaintiff needed an assistive device for standing and walking, there are numerous notations in his own records that indicate that the plaintiff exhibited a normal gait with the ability to stand and ambulate without any assistance. Furthermore, the plaintiff reported that he was able to manage basic activities of daily living without much help.

In addition to the inconsistency within his own records, the ALJ discussed that Dr. Coveleski's extreme functional limitations were also inconsistent with the other evidence of record. Specifically, the ALJ considered the opinion of Maurice Prout, PhD, who found that the plaintiff had

only mild restrictions in his activities of daily living, social functioning, and concentration, persistence and pace, and found there was no evidence of decompensation. Dr. Prout opined that the plaintiff's anxiety was a non-severe impairment. These findings were adopted by Alex Siegel, PhD, who also found the plaintiff's anxiety to be non-severe.

The ALJ considered the opinion of Vinod Kataria, M.D., who found the plaintiff capable of light work activity with limited exposure to vibration and hazards like unprotected heights and moving mechanical parts. Dr. Kataria found that the plaintiff could occasionally stoop, kneel, crouch, crawl, climb ramps and stairs, balance, and climb ladders, ropes and scaffolds. According to Dr. Kataria, the plaintiff would be limited to reaching overhead with his right upper extremity. The ALJ gave Dr. Kataria's opinion some weight, indicating that other evidence of record justified eliminating the climbing of ladders, ropes and scaffolds, and warranted an occasional push/pull restriction with the bilateral upper extremities.

In addition, the ALJ considered the opinion evidence of Robert Mogel, MD, who essentially adopted Dr. Kataria's opinion, but added a restriction limiting the plaintiff to reaching in front and/or laterally and overhead on the right side. The ALJ found that Dr. Mogel's opinion was entitled to some weight for the same reasons as Dr. Kataria's, and limited the plaintiff to only occasional pushing and pulling with the bilateral upper extremities to account for the plaintiff's cervical degenerative disc disease.

11

The ALJ considered the opinion evidence of Komarneni Sreedevi, MD, who assessed the plaintiff with a global assessment of functioning ("GAF") score of 65. Dr. Sreedevi's opinion was given limited weight because the GAF score was found to be of limited evidentiary value in light of their subjectivity.[4]

The ALJ further considered the opinion of John Johnson, MD, who referred to the plaintiff as "partially disabled," a term not utilized in the Social Security regulations. The ALJ gave Dr. Johnson's opinion little weight as the issue of disability is one reserved to the Commissioner and Dr. Johnson's

---

[4]A GAF score is a subjective scale that was set forth in the American Psychiatric Associations' Diagnostic and Statistical Manual of Mental Health ("DSM"). The score "assesses how well an individual can function according to psychological, social, and occupational parameters, with the lowest scores assigned to individuals who are unable [to] care for themselves." Pounds v. Astrue, 772 F.Supp.2d 713, 716, n. 2 (W.D. Pa. 2011); Diagnostic & Statistical Manual Of Mental Disorders (Fourth).
The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. DSM-IV, at 3-32. A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. A GAF score between 61 and 70 reflects mild symptoms or some difficulty in functioning. DSM-IV, at 34.
The law, however, provides that "[a] GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings." See Gilroy v. Astrue, 351 Fed.Appx. 714, 715 (3d Cir. 2009). Moreover, the latest edition of the DSM recommended that the GAF scoring scale be discontinued. It explained that the GAF scale has a conceptual lack of clarity and "questionable psychometrics in routine practice." Diagnostic And Statistical Manual Of Mental Disorders (Fifth) at 16. Thus, the latest edition of the American Psychiatric Association's DSM does not contain the GAF scale. It is therefore apparent that GAF scores are of limited value in determining whether an individual is disabled.

findings related directly to the plaintiff's claims for workers' compensation.

Finally, the ALJ considered the lay opinion evidence, including evidence submitted by the plaintiff's wife and mother. These opinions were given some weight in regard to their observations of the plaintiff's symptoms. Portions of these opinions which were conclusory as to the plaintiff's functional abilities were allotted little weight by the ALJ. Here, the ALJ also considered the plaintiff's own subjective complaints of limitations in ambulation and limitations as a result of pain. Although the ALJ found that the plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that the plaintiff's statements regarding the intensity, persistence and limiting effects of the symptoms were not entirely credible.

In reviewing the decision of the ALJ, the court finds that the ALJ properly considered the medical evidence of record and determined that Dr. Coveleski's opinion was entitled to limited weight. The ALJ explained her reasoning for affording Dr. Coveleski's opinion such weight noting its internal inconsistency, as well as inconsistency with the other medical evidence of record. A treating physician's opinion can be afforded lesser weight, or even rejected, by the ALJ based on inconsistent or contradictory evidence of record. Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988). Because the extreme limitations imposed by Dr. Coveleski were inconsistent with both his own records and with other medical records, the ALJ was justified in affording

his opinion limited weight. As such, the court finds that substantial evidence supports the ALJ's decision in this regard.

The plaintiff also argues that, although the ALJ acknowledged his use of a walker, she failed to include this limitation in her RFC. The plaintiff argues that Dr. Coveleski opined that the walker was medically necessary and, as such, the ALJ erred in failing to include this limitation in her RFC assessment.

In order "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." Paxton v. Berryhill, 2019 WL 1376073, at *2 (S.D.W. Va. Mar. 27, 2019) (citing SSR 96-9p (S.S.A. July 2, 1996), 1996 WL 374185, at *7 ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).")). "If the claimant fails to supply appropriate documentation, the ALJ need not include the use of an assistive walking device in the RFC assessment." Id. (citing Helms v. Berryhill, 2017 WL 3038154, at *8 (E.D. Va. 2017), *adopted by* 2017 WL 3032216 (E.D. Va. 2017)). "Courts have held claimants to a high burden in supplying the appropriate documentation." Id. (citations omitted). In non-precedential decisions, the Third, Seventh, and

Tenth Circuits have required an unambiguous opinion from a physician stating the circumstances in which the assistive device is medically necessary. See e.g., Tripp v. Astrue, 489 F. App'x 951, 954 (7th Cir. 2012) (finding the treating physician's statement that the claimant "does need a crutch" lacked the specificity to establish whether the crutch was a medical necessity); Staples v. Astrue, 329 F. App'x 189, 191-92 (10th Cir. 2009) (finding the treating physician's statement that the claimant "still uses a cane to walk" as insufficient to establish medical necessity); Howze v. Barnhart, 53 F. App'x 218, 222 (3d Cir. 2002) (finding the evidence did not establish the claimant's cane was medically necessary when the treating physician provided a "script" for a cane and checked boxes for "hand-held assistive device medically required for ambulation" in a report).

Here, the plaintiff has not pointed to sufficient evidence in the record to demonstrate that his walker was medically necessary such that the ALJ was required to provide for it in her RFC assessment. Neither Dr. Coveleski's check mark on a form indicating that the walker is medically necessary, nor the plaintiff's self reports is sufficient to support this limitation. Therefore, the ALJ was not required to include the use of a walker as a limitation in her RFC assessment and the court finds that the ALJ's RFC is supported by substantial evidence in the record.

## V. CONCLUSION

For the reasons stated above, the court finds that the decision of the Commissioner denying plaintiff's application for DIB is supported by substantial evidence. Thus, defendant's motion for summary judgment, **(Doc. 13)**, will be **GRANTED**, and the plaintiff's motion for summary judgment, **(Doc. 11)**, will be **DENIED**. Accordingly, pursuant to 42 U.S.C. §405(g), the decision of the Commissioner will be **AFFIRMED** and, plaintiff's **APPEAL**, **(Doc. 1)**, will be **DENIED**. An appropriate order will be issued.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: April 23, 2019**

17-784-01.wpd